UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                             Case No. 1:09-cr-252

v.                                           HON. JANET T. NEFF

JEFFERY JOHN YOUNG,

      Defendant.
_____/

## SENTENCING MEMORANDUM

Jeffrey JohnYoung pled guilty to a single count Information charging him with possession of child pornography in violation of U.S.C. §§ 2252(a)(4)(B) and (b)(2). The Probation Officer correctly scored his Total Offense Level as 29, determined as follows:

| | | | |
|---|---|---|---|
| Base OL | § 2G2.2(a)(1) | | 18 |
| Specific Offense Characteristic | § 2G2.2(b)(3)(B) | | +5 |
| Specific Offense Characteristic | § 2G2.2(b)(4) | | +4 |
| Specific Offense Characteristic | § 2G2.2(b)(6) | | +2 |
| Specific Offense Characteristic | § 2G2.2(b)(7)(B) | | +3 |
| Acceptance of Responsibility | § 3E1.1(a) | | -2 |
| Timely Plea | § 3E1.1(b) | | <u>-1</u> |
| Total Offense Level | | | 29 |

Specific Offense Characteristics accounted for 14 Offense Levels, almost half of the Total Offense Level.

Defendant's Criminal History Category was I, based on zero criminal history points. At Offense Level 29 and Criminal History Category I, his Advisory Guideline Range for imprisonment was 87-108 months. This Court sentenced defendant to one day imprisonment. Because of the significant departure/variance from the guidelines range, this written Memorandum in conjunction with the written Judgment of sentence follows to provide greater detail regarding the reasons given for the sentence imposed. Three issues are presented for consideration: (1) the scoring enhancement under U.S. SENTENCING GUIDELINES (U.S.S.G.) MANUAL § 2G2.2(b)(3)(B); (2) defendant's request for a departure under U.S.S.G. §5H1.4; and (3) the application and analysis of the statutory factors of 18 U.S.C. § 3553(a).

I

As explained in the October 2009 publication of the United States Sentencing Commission titled, "The History Of The Child Pornography Guidelines, (C.P. Guidelines)"[1] since their first promulgation in 1987 the Guidelines have been substantively amended nine times. As noted in that publication, "For the past several years, § 2G2.2 has had a high and increasing rate of downward departures and below-guideline variances." C.P. Guidelines, p. 8, (footnote omitted). The paper, 54 pages in length, provides ample proof of the complexity, confusion and inconsistencies that have been occasioned by the application of the Guidelines to this category of crimes. Applying them in a fair, unbiased way so as to meet the duty to impose sentences that are sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a) is a difficult task, at best.

---

[1]The paper focuses primarily on offenses sentenced under § 2G2.2 - p 8.

II

The specific scoring issue in this case is whether to apply a five-level enhancement under § 2G2.2(b)(3)(B), an enhancement added in amendments to the Guidelines effective November 1, 2000.[2] The hinge issue is whether on the facts of this case defendant received a thing of value, but not for pecuniary gain, as a result of trading images with at least one other person. Is child pornographic material received in a bartered exchange for other child pornographic material a "thing of value" for purposes of scoring the guideline enhancement?

After further review of the Application Notes which follow § 2G2.2 in the Federal Guidelines Manual, I must confess error in my scoring computation. The Definitions section of the Application Notes concludes that in cases where child pornography is traded for other child pornography, a thing of value has been exchanged. Therefore, the scoring of the five-level enhancement under § 2G2.2(b)(3)(B) was correct and before departures and variances, defendant's Total Offense Level is properly 29 and his Advisory Guideline Range of imprisonment is 87-108 months.[3]

III

As of April 2009, defendant has been determined to be totally disabled by the Social Security Administration. This decision was based at least in part on an evaluation of defendant's condition by A. Borders-Robinson, D.O., whose report of January 22, 2009 concludes that he has significant deficits which disable him completely from meaningful employment. These deficits include

---

[2] Section 2G2.2(b)(3) contains multiple enhancements for distribution of child pornographic material.

[3] *See also United States v Hibbler*, 159 F 3d 233 (6th Cir, 1998).

3

relentless fatigue, cognitive impairment, speech that is slurred and dysarthritic, motor weakness and coordination with ataxia, depression, cognitive slowing and forgetfulness. His MRI showed generalized atrophy of the brain.

Other medical and neuropsychological reports form a significant portion of the rationale for the Court's sentencing decision as it relates to the departure under § 5H1.4 and variance under 18 U.S.C. § 3553(a).

Medical reports of Gary L. Miller, D.O. dated 12/7/07 and 1/23/08 resulted in an impression of "relapsing-progressing multiple sclerosis 5.0-5.5" and an MRI was consistent with "an underlying demyelinating disease process." Defendant has suffered from multiple sclerosis for more than sixteen years. His disease affects his gait and balance, speech and mental concentration. He has problems with transient, left-sided numbness as well as myalgia of his lower limbs, especially the left, and feelings of light-headedness and dizziness.

The report of Steven A. Harris, Ed.D. of defendant's neuropsychological examination is even more pertinent to sentencing in this case. In addition to a clinical interview, defendant submitted to a battery of tests. Dr. Harris concluded that defendant did not dissimulate or try to present himself in an unrealistically favorable light.

Dr. Harris found significant levels of impairment involving both the encoding as well as retrieval of auditorily presented stimuli, unusually high degrees of forgetting and an unusually high number of perseveration errors, the latter likely associated with frontal lobe pathology. He is slowed in his ability to process information and impaired in his ability to focus and sustain attention.

Some of Dr. Harris' conclusions directly address sentencing considerations:

1. Nothing in defendant's history suggested addiction or aberrant forms of sexual acting out behavior outside consensual, adult activity.

2. There was no indication of inappropriate sexual expressions with children or stepchildren.

3. There was no indication of any bestiality or sadomasochistic acting out behavior.

4. If anything, his history is one of considerable naivete towards sexual encounters with female partners.

5. His cognitive impairments contributed to his impaired judgment in promoting an escalation of these type of exchanges.

6. There is predominant frontal lobe dysfunction; this is the part of the brain responsible for reasoning and for the ability to anticipate the consequences of one's actions. He has severe impairment in the area of cognitive functioning such that his judgment as well as his capacity to control impulses were seriously compromised.

7. Nothing in the assessment identifies any sociopathic or antisocial traits or characteristics, and his past history is inconsistent with any type of antisocial or severe character disorders.

8. There is no indication of sexual addiction or proclivity towards aberrant sexual desires or preferences.

9. He is genuinely remorseful and assumes full responsibility for his behavior.

10. His compromised immune system makes him particularly vulnerable to viral and bacterial infection.

11. He possesses the capacity for rehabilitation without the need for harsh punishment or severely restrictive confinement such as long-term confinement. The latter would likely be a death sentence given his medical and neuropsychological status.

12. There are no contraindications to a sentence of lengthy probation with electronic monitoring, intense ongoing outpatient treatment and severe restrictions to mobility.

IV

In arguing against a departure under § 5H1.4 or a variance under 18 U.S.C. § 3553(a), counsel for the government cited 18 U.S.C. § 3553(b)(2) for the proposition that for the crime in this case the Court's discretion is limited to a sentence within the Advisory Guideline Range except in very limited circumstances. However, in *United States v Shepherd*, 453 F 3d 702, 705 (6th Cir. 2006), the Sixth Circuit Court of Appeals held that this statutory provision must be excised as a result of the holding of *United States v Booker,* 543 US 220 (2005). This holding would also seem to negate the effect of § 5K2.0(b), cited by government counsel, because that section of the Guidelines' Policy Statement relies on 18 U.S.C. § 3553(b). Other portions of § 5K2.0 providing for other grounds for departure remain intact and allow for guidelines departures for mitigating circumstances not fully taken into account otherwise and where multiple circumstances create the exceptional case.

Based on the medical and neuropsychological reports of defendant's health, a departure under § 5H1.4. is appropriate. This Policy Statement provides, in part, that an "extraordinary physical impairment may be a reason to depart downward," citing as an example that where the defendant is seriously infirm, home detention very well could be as efficient and less costly than imprisonment.

Section 5K2.22 dovetails with §5H1.4 and provides further support for a departure from the Advisory Guidelines Range in this case. Section 5K2.22(2), titled, "Specific Offender Characteristics as Grounds for Downward Departure in Child Crimes and Sexual Offenses," provides that where there is an extraordinary physical impairment, the Court may conclude that it is a reason to depart downward if and to the extent provided by § 5H1.4. As noted, the medical evidence establishes that defendant suffers from an extraordinary physical impairment justifying a § 5H1.4 departure to the extent of home detention in lieu of imprisonment.

V

Defense counsel filed an extensive Sentencing Memorandum with attachments, which included medical and neuropsychological reports that factored heavily in the sentencing decision, and particularly in determining that a substantial variance from the Advisory Guideline Range is appropriate on the facts of this case. Counsel for the government argued strongly that the most relevant factor to consider under § 3553(a) is the seriousness of the offense. This Court acknowledges, as it did during the sentencing hearing, that offenses involving child pornography are extremely serious ones.

Recognizing the seriousness of defendant's offense as reflected in the guidelines scoring of Offense Level 32,[4] I nevertheless am left with questions about the guidelines approach to scoring that adds numerous levels for various offense characteristics with little or no real apparent reasoning and sometimes draws very fine lines of difference, which are open to question and difficult to apply. For instance, a defendant is scored at least five levels under both §§ 5G2.2(b)(3)(A) & (B) whether distribution is for pecuniary gain or is just in trade for other pornographic material.

---

[4] Before three credits for acceptance of responsibility and timely plea reduced it to 29.

In any event, the analysis of the statutory factors cannot end with the determination of the seriousness of the offense, itself inexact science. When the remaining factors are considered, the government's argument for a sentence within the Advisory Guideline Range fails.

The history and characteristics of defendant, in addition to the medical issues already discussed, lend support to a variance in this case. Defendant immediately cooperated with the government and pled to an Information, obviating the need for a grand jury indictment, as counsel for the government acknowledged in allocution. His actions leading to this prosecution represent aberrant behavior, which arise at least in part from his disease process, the medications he takes for it, and the depression that results from it. He would be very vulnerable in a prison setting. He is repentant, recognizes the wrongfulness of his conduct, and has taken affirmative action to address it.

The statute includes five factors under the rubric of "Purposes of Sentencing." Punishment and promoting respect for the law are the first two of these. As noted by Dr. Harris, defendant has a "life-long history of conformity devoid of legal transgressions of virtually any kind." Certainly it will not take prison to foster respect for the law. Home confinement and lengthy supervised release with multiple conditions will serve the punishment factor well.

The next two factors in this category are deterrence and protection of the public. The conditions of supervised release will be a strong deterrent to any future bad conduct. The U.S. Probation Office has the current ability to monitor defendant's physical movements and to enforce the condition that he not access the Internet for any purpose. Defendant is no danger or threat to the public; he has never acted out and is not likely to in the future. Indeed, he is probably physically unable to do any acting out.

The final factor is rehabilitation, which defendant has already undertaken on his own with counseling and active participation in the multiple sclerosis support group. As Dr. Harris concluded, these are likely to be more effective outside the prison setting and he has every potential to return to society as a productive, safe citizen.

VI

Is this a heartland case? I am not sure there is such a thing with regard to these kinds of cases. Balancing the statutory factors, do the guideline ranges properly reflect the purposes of the statute? I think not. What is a sentence sufficient, but not greater than necessary, to comply with the purposes of the statute? I believe it to be home confinement along with lengthy supervised release with strict conditions for compliance.

Throughout the October 2009 paper cited early in this Sentencing Memorandum, the U.S.S.C. emphasizes that one of the prime purposes of the Guidelines in carrying out the intent of Congress in criminalizing and punishing those who possess, distribute, use and profit from child pornography is to determine how best to identify likely child sex offender recidivists. Here the defendant has been identified to be a very unlikely recidivist and, as such, the case is made for a sentence that does not imprison him.

DATED: February 5, 2010        /s/ Janet T. Neff
      JANET T. NEFF
      United States District Judge